```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
UNITED STATES OF AMERICA                                       :
                                                               :
             -v-                                               :
                                                               :   13-cr-00777 (LJL)
TARIQ GILL,                                                    :
                                                               :   OPINION AND ORDER
                           Defendant.                          :
                                                               :
---------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Defendant Tariq Gill moves, pursuant to 18 U.S.C. § 3582(c)(1)(A), for compassionate release and a reduction of his sentence to time served. Dkt. No. 209.

## BACKGROUND AND DISCUSSION

On August 20, 2014, the Court sentenced Gill to a term of imprisonment of 224 months, to be followed by five years' supervised release, Dkt. No. 88, after Gill pleaded guilty on March 21, 2014, to a three-count indictment. The indictment charged Gill with (1) conspiracy to distribute narcotics in violation of 21 U.S.C. § 846; (2) conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951; and (3) possession of a firearm during a "narcotics trafficking offense" or "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A). Dkt. No. 10. At the time of sentencing, the Honorable Judge Alison J. Nathan (to whom the case was then assigned) described the relevant facts: "Mr. Gill stands convicted of a very serious crime . . . . He pled guilty to planning with others to commit an armed robbery of drug dealers. . . . [T]he factual record does not indicate that Mr. Gill was a hesitant participant. To the contrary it shows that Mr. Gill was ready and willing to participate. He was actively involved in the planning of the robbery and he came to the event with a loaded and cocked gun. That is very dangerous indeed." Dkt. No. 89 at 23. Judge Nathan also noted that "in recorded conversations Mr. Gill boosted

[sic] about his experience in handling narcotics and then committing violent robberies. In other conversations he appeared to indicate his willingness to shoot and kill robbery victims." *Id.* Judge Nathan also found that Mr. Gill "has committed essentially one crime after the other in a string of prior narcotics convictions throughout much of his adult life," and that "a substantial sentence [wa]s necessary to protect the public from Mr. Gill." *Id.* at 24. Notwithstanding those observations, the Court varied from the otherwise applicable Guidelines range of 262 to 327 months' imprisonment to impose a sentence on Mr. Gill below the Guidelines, in light of his individual characteristics, his history, and his acceptance of responsibility. *Id.* at 22–27.

Section 3582(c)(1)(A)(i) of Title 18 of the United States Code provides that a district court, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of [a defendant's] imprisonment . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before reducing a defendant's sentence, a district court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "In evaluating compassionate-release motions, 'courts regularly consider whether compassionate release would be consistent with § 3553(a) by considering how early release would impact the aims of the original sentence.'" *United States v. Harper*, 2022 WL 599037, at *1 (2d Cir. Mar. 1, 2022) (summary order) (first quoting *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020), and then citing *United States v. Kanter*, 853 F. App'x 723, 726–27 (2d Cir. 2021)).

Mr. Gill, through counsel, argues that there are extraordinary and compelling reasons to grant him compassionate release and to reduce his sentence to time served.  He points to (1) what he claims to be his extraordinary rehabilitation; (2) the unanticipated impact of the COVID-19 pandemic upon his confinement; (3) the continued risk of severe illness to which Mr. Gill remains exposed by virtue of his confinement and subvariants of COVID-19; (4) his hypertension and prediabetes which enhance his risk of severe illness if he contracts COVID-19; and (5) his lack of access to prison services.  Dkt. No. 210 at 23; *see also* Dkt. No. 218 at 1 (identifying "harsh and inhumane prison conditions," "increased risk of contracting a COVID subvariant as an inmate in a carceral setting," "underlying heath issues," "extraordinary rehabilitation efforts," and "failure to provide Mr. Gill access to recommended educational opportunities" as bases for compassionate release).

Mr. Gill's conduct in prison has been commendable as a general matter.  It bespeaks a person who is capable of becoming a valuable, contributing member of society upon his release, and who has the desire to do so.  It is consistent with the materials presented by defense counsel in connection with Mr. Gill's sentencing.  *See* Dkt. No. 76-15.  Following his sentencing and through approximately the end of 2020, Mr. Gill was incarcerated at FCI Raybrook.  While at FCI Raybrook, he obtained his GED and completed six self-study courses.  Dkt. No. 210 at 7.  He also completed courses in (1) drug education; (2) non-residential drug abuse program; and (3) lower back class.  *Id.*  He worked in the facility's food services as a cook for on average 7–8 hours a day and achieved excellent work reviews.  *Id.* at 8–10.  The reviews recite that he is an "outstanding cook," "[e]xcellent cook," and an "[e]xcellent worker" who does "great work" and does everything that is asked of him.[1]  *Id.*  In early 2021, Mr. Gill was transferred to USP-

---

[1] Prior to his arrest, Mr. Gill owned and operated a restaurant in Paterson, New Jersey.  PSR

Canaan. *Id.* at 10. While there, he has had no educational opportunities and fewer employment opportunities but still he gained employable work as a plumber. *Id.* at 10–11. He has a well thought-through and realistic plan for work upon his release that he has worked upon while incarcerated. *Id.* at 11–12. Mr. Gill has submitted a letter from a family member that is moving, and speaks to his ability to move forward in a law-abiding manner upon his release. Dkt. No. 219.

Mr. Gill has high blood pressure (stage 2 hypertension) and has been diagnosed with prediabetes. Dkt. No. 210 at 12–14. He also appears to suffer from cardiac issues including an abnormal EKG. *Id.* at 15. Members of his family have suffered from similar health conditions. *Id.*

Mr. Gill has not established that there exist "extraordinary and compelling" reasons sufficient to justify compassionate release or that his release, at this point, when he still has many years left on his sentence, would be consistent with Section 3553(a).[2] The district court enjoys "broad" discretion as to what constitutes an "extraordinary and compelling" reason for compassionate release. *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). With one exception, the court may "consider *any* extraordinary and compelling reason for release that a defendant might raise," *id.* at 230, and the "full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," *id.* at 237.

Mr. Gill's rehabilitation, however, alone is not a basis for compassionate release. *Id.* at 238. Moreover, none of Mr. Gill's other asserted bases for compassionate release—whether

---

¶ 86.
[2] Mr. Gill exhausted administrative remedies when his request for compassionate release was denied by the warden at USP-Canaan on April 30, 2021. *Id.* at 20.

4

analyzed separately or together and with his rehabilitation—constitute extraordinary and compelling reasons.  Mr. Gill argues that he remains exposed to the continued risk of COVID-19 and its subvariants by virtue of his confinement, and due to his hypertension and prediabetes, which enhance his risk of severe illness if he contracts COVID-19.  But it is inherent to the nature of confinement in a tight space that there may be a greater risk of infection with an airborne disease than in an open environment.  *See United States v. Park*, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("The nature of prisons – crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products – put those incarcerated inside a facility with an outbreak at heightened risk.").  Mr. Gill's generalized concern that he is at greater risk of contracting COVID-19 because he is in prison by definition does not establish an extraordinary reason for release.  The identical argument could be made by virtually every inmate confined at USP-Canaan.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Federal Bureau of Prison's] statutory role, and its extensive and professional efforts to curtail the virus's spread.").  Moreover, while at the time of Mr. Gill's motion, USP-Canaan was at operational level 2 (and he argues that it was at level 3 for most of the time there, Dkt, No. 210 at 18), the most current information from the website of the United States Bureau of Prisons is that USP-Canaan is operating at COVID-19 operational level 1, reflecting that its medical isolation rate is less than 2 percent and that there have been fewer than 100 new community positive cases per 100,000 over the past seven days.  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited March 25, 2023).  Programs and services are operating at normal capacity as is recreation, and there is normal

visitation.  *Id.*  According to the website for the Federal Bureau of Prisons, as of March 23, 2023, there are no inmates or staff who have recently tested positive for COVID-19.  Virtually all of the inmates are fully vaccinated.  No inmates have died from COVID-19 at USP-Canaan.  *Id*.

Although "preexisting health conditions can constitute 'extraordinary and compelling' circumstances in some cases," *United States v. Mallay*, 2023 WL 408950, at *1 (2d Cir. Jan. 26, 2023), Mr. Gill fails to demonstrate that either his hypertension or his diagnosis with prediabetes present such circumstances in this case, even with the impact that COVID-19 can have on persons with those pre-existing conditions.  *See* CDC*, Underlying Medical Conditions*, June 15, 2022, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (recognizing that hypertension may put an individual at higher risk for developing complications from Covid).  According to the United States Center for Disease Control, nearly half of adults in the United States (47% or 116 million) have hypertension or are taking medication for hypertension, and about half of adults with uncontrolled hypertension (including approximately 37 million adults) have a blood pressure that puts them in the range of Stage 2 hypertension.  *See* CDC, *Facts About Hypertension*, Jan. 5, 2023, https://www.cdc.gov/bloodpressure/facts.htm. Mr. Gill is receiving care for his hypertension, *see*, *e.g.*, Dkt. No. 217, Ex. A; there is no factual basis to believe that the Federal Bureau of Prisons will not be able to handle his condition. Moreover, according to the CDC, "[a]pproximately 96 million American adults – more than 1 in 3 – have prediabetes."  CDC, *Prediabetes – Your Chance to Prevent Type 2 Diabetes*, Dec. 30, 2022, https://www.cdc.gov/bloodpressure/facts.htm.  Mr. Gill does not present any "extraordinary or compelling" considerations.  He is vaccinated against COVID-19, having received two doses of the Moderna vaccine in 2021 and a vaccine booster in 2022.  Dkt. No. 217, Ex. A at 52; Dkt. No. 217, Ex. B at 67.  *See United States v. Diaz*, 2022 WL 16631169, at *1 (2d

6

Cir. Nov. 2, 2022) (holding that district court did not abuse its discretion when it relied upon defendant's vaccination status in denying motion for compassionate release). His health conditions do not present a basis for compassionate release. *See United States v. Fox*, 2023 WL 379539, at *1 (2d Cir. Jan. 25, 2023) (holding that district court did not abuse its discretion in determining that defendant's obesity, high cholesterol, hypertension, and prediabetes were insufficient to warrant compassionate release based on the findings that the Bureau of Prisons had a demonstrated ability to manage COVID-19 infections and that the supply of vaccines was increasing); *United States v. Yancy*, 2022 WL 6585231, at *1 (2d Cir. Oct. 7, 2022) (district court did not abuse its discretion in determining that hypertension and prediabetes were not so serious and could be controlled by the Bureau of Prisons).[3]

      Mr. Gill further argues that the Court should grant compassionate release based on the unanticipated impact of the COVID-19 pandemic upon his confinement and his lack of access to prison services. Those conditions have been assessed as a factor under § 3553(a), rather than an "extraordinary and compelling" reason warranting compassionate release. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 461 (S.D.N.Y. 2021) (assessing the conditions of confinement under the COVID-19 pandemic and noting that "unusually arduous conditions merit[s] recognition by courts in measuring a just sentence"). The restrictions at USP-Canaan, and at the other facilities of the Bureau of Prisons—even if understandable—are regrettable. But they do not provide a basis to single out Mr. Gill for compassionate release. Moreover, Mr. Gill has been able to work as a plumber and, as indicated above, programs and services at the institution are now operating at normal capacity.

---

[3] In his reply memorandum, Mr. Gill also mentions obesity as a basis for compassionate release. Dkt. No. 218 at 4, 7–8. More recent cases have also held that obesity does not necessarily rise to the level of an extraordinary and compelling circumstance. *See Fox*, 2023 WL 379539, at *1.

Finally, even if Mr. Gill had established extraordinary and compelling reasons that would permit the Court to grant him compassionate release, the Court would not exercise its discretion to do so based upon an analysis of the Section 3553(a) factors at the time of the motion. *See United States v. Alba*, 2023 WL 220988, at *3 (2d Cir. 2023); *see also United States v. Hunter*, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (summary order) (same); *United States v. Fleming*, 5 F.4th 189, 194 (2d Cir. 2021) (same). The charges in this case stem from agreement to participate in what he believed would be the armed robbery of rival drug dealers transporting a load of approximately 18 kilograms of cocaine and 5 kilograms of heroin from Florida to New York (but was, in fact, a sting). Dkt. No. 78 at 3; PSR ¶ 18. In the initial meetings to set up the robbery, Mr. Gill made clear not only that he would be armed but that he was prepared to kill his victims. Dkt. No. 78-2; *see also* PSR ¶ 17. In a July 2013 meeting, after Mr. Gill's co-defendant indicated to the confidential witness in this case that he might kill his intended victims and intended to "take everyone out," Mr. Gill responded that he was a "good shot." *Id*. During the meeting before the robbery, he discussed his membership in a violent street gang. Dkt. No. 78 at 5. At the time of his arrest, at the location of the planned robbery, a loaded and cocked Smith and Wesson .9 millimeter handgun was found at his feet. *Id*.; PSR ¶ 20. Both of his co-conspirators also were armed and one was wearing a bullet-proof vest. *Id*. ¶¶ 20–21. He had 24 criminal history points based on at least 10 prior convictions. Dkt. No. 78 at 8. The prior convictions included four for distribution of narcotics, as well as convictions for threatening to kill another and for resisting arrest. *Id.*; PSR ¶¶ 53–59.

The release of Mr. Gill at this stage, when he still has numerous years remaining on his sentence, would be inconsistent with the seriousness of his offense—a conspiracy to commit Hobbs Act robbery and to steal large quantities of heroin and cocaine during which he and his

co-conspirators possessed loaded firearms.[4]  It also would effectively result in a sentence that would be insufficient to serve either the interests of general deterrence or specific deterrence. Mr. Gill has a lengthy criminal record.  The conduct in this case was by no means aberrant.  The prior sentences Mr. Gill received were insufficient to deter him from future criminal conduct. Finally, notwithstanding Mr. Gill's commendable adjustments to prison, the Court concludes—in light of Mr. Gill's criminal record, the fact that he committed the instant crime while on probation, and the risk of recidivism—that continued incarceration is necessary to protect the public.[5]

---

[4] The Court has considered Mr. Gill's argument that if sentenced today he would not be considered a career offender.  Dkt. No. 210 at 48–49; Dkt No. 218 at 15.  Mr. Gill made arguments at the time of sentencing that he should not be considered a career offender and Judge Nathan considered those arguments, stating "I think it will suffice for present purposes even if those arguments were accepted, Mr. Gill would still face a range of 248 to 295 months' imprisonment," even without application of the Career Offender provision, given his "extensive criminal history."  Dkt. No. at 25; *see also id*. at 10.  The Court then gave Mr. Gill a sentence of 224 months' imprisonment, which was below the Guidelines sentence even absent the Career Offender enhancement.  Although Mr. Gill's rehabilitation efforts are commendable, they are not sufficient to offset the gravity of his crimes, the need for deterrence, and his risk of recidivism.

[5] Although Mr. Gill's adjustment to prison has been good, it has not been without its blemishes. He has seven disciplinary reports from May 2014 to October 2020, including for possession of drugs.  Dkt. No. 217, Ex. C.

## CONCLUSION

The motion for compassionate release is DENIED.[6]  The Clerk of Court is respectfully directed to close Dkt. Nos. 209 and 215.

SO ORDERED.

Dated: March 28, 2023
       New York, New York

LEWIS J. LIMAN
United States District Judge

---

[6] The Second Circuit has held that denial of a motion for compassionate release "generally will not preclude a renewed application based on changed circumstances." *United States v. Roney*, 833 F. App'x 850, 855 (2d Cir. Nov. 2, 2020).